**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------
RYAN O'DELL,                                      :
                                                  :
              Plaintiff,                          :    Civil Action No. 22-cv-10211
                                                  :
v.                                                :    COMPLAINT FOR VIOLATIONS OF
                                                  :    SECTIONS 14(a) AND 20(a) OF THE
VELODYNE LIDAR, INC., VIRGINIA                    :    SECURITIES EXCHANGE ACT OF
BOULET, MICHAEL E. DEE, ERNEST E.                 :    1934
MADDOCK, ANDY MATTES, KRISTIN                     :
SLANINA, THEODORE L. TEWKSBURY,                   :    JURY TRIAL DEMANDED
PH.D., and HAMID ZARRINGHALAM,                    :
                                                  :
              Defendants.                         :
--------------------------------------------------------   :
                                                  :
```

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Velodyne Lidar, Inc. ("Velodyne or

the "Company") the members Velodyne's board of directors (the "Board" or the "Individual

Defendants"), and Ouster Medical Inc. and affiliates ("Ouster" and collectively with the Company,

the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act

of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R.

240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Velodyne

and Ouster, Inc..

2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on November 23, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby (i) Oban Merger Sub, Inc., a direct, wholly owned subsidiary of Ouster ("Merger Sub I"), will merge with and into Velodyne, with Velodyne surviving the merger; and (ii) whereby Velodyne will merge with and into Oban Merger Sub II LLC, a direct, wholly owned subsidiary of Ouster ("Merger Sub II"), with Merger Sub II as the surviving entity (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on November 4, 2022 (the "Merger Agreement"), each Velodyne stockholder will receive a fixed exchange ratio of 0.8204 shares of Ouster common stock for each share of Velodyne common stock owned on the closing date (the "Merger Consideration").

3.      As discussed below, Defendants have asked Velodyne's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, BofA Securities, Inc. ("BofA") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Velodyne's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because plaintiff resides in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Velodyne stock and has held such stocks since prior to the wrongs complained of herein.

10.     Individual Defendant Virginia Boulet has served as a member of the Board since November 2021 and is the Chairperson of the Board.

11.     Individual Defendant Michael E. Dee has served as a member of the Board since September 2020.

12.     Individual Defendant Ernest E. Maddock has served as a member of the Board since January 2022.

13.     Individual Defendant Andy Mattes has served as a member of the Board since June 2022.

14.     Individual Defendant Kristin Slanina has served as a member of the Board since May 2021.

15.     Individual Defendant Theodore L. Tewksbury, Ph.D. has served as a member of the Board since November 2021 and is the Company's Chief Executive Officer.

16.     Individual Defendant Hamid Zarringhalam has served as a member of the Board since February 2021.

17.     Defendant Velodyne is a Delaware corporation and maintains its principal offices at 5521 Hellyer Avenue, San Jose, California 95138.   The Company's stock trades on the NASDAQ Global Select Market under the symbol "VLDR."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

20.     Velodyne provides real-time 3D vision for autonomous systems worldwide. It offers surround-view lidar for autonomous vehicles, drones, security, mobile robots, and mapping applications; and solid state lidar for advanced driver assistance systems and autonomous applications. The Company also provides Vella Development Kit that provides access to lidar-based perception software paired with sensors; Intelligent Infrastructure Solution for monitoring traffic networks and public spaces to generate real-time data analytics and predictions for enhancing traffic and crowd flow efficiency; and Vella software solution, a data curation software platform. Velodyne was founded in 1983 and is headquartered in San Jose, California.

21.     On November 7, 2022, the Company and Ouster jointly announced the Proposed

Transaction:

> SAN FRANCISCO, CA – [November 7, 2022 6:00 AM ET] – Ouster (NYSE: OUST), a leading provider of high-resolution digital lidar, and Velodyne (NASDAQ: VLDR, VLDRW), a leading global player in lidar sensors and solutions, announced that they have entered into a definitive agreement to merge in an all-stock transaction. The proposed merger is expected to drive significant value creation and result in a strong financial position through robust product offerings, increased operational efficiencies, and a complementary customer base in fast-growing end-markets.
>
> **Key Strengths of the Combined Company:**
>
> - Operational synergies across engineering, manufacturing, and general administration support an optimized cost-structure
>
> - Robust product offerings, including verticalized software, to serve a broad set of customers
>
> - Complementary customer base, partners, and distribution channels, coupled with reduced product costs and an innovative roadmap, to accelerate lidar adoption across fast-growing end markets
>
> - Extensive intellectual property portfolio with 173 granted and 504 pending patents, backed by over 20 years of combined experience in lidar technology innovation
>
> - World-class leadership team to be led by Dr. Ted Tewksbury as Executive Chairman of the Board and Angus Pacala as Chief Executive Officer
>
> - Strong financial position with combined cash balance[1] of approximately $355 million as of September 30, 2022
>
> - Compared to stand-alone cost structures as of September 30, 2022, annualized operational expenditure synergies of at least $75 million expected to be realized within 9 months after transaction-close
>
> "Ouster's cutting-edge digital lidar technology, evidenced by strong unit economics and the performance gains of our new products, complemented by Velodyne's decades of innovation, high-performance hardware and software solutions, and established global customer footprint, positions the combined company to accelerate the adoption of lidar technology across fast-growing markets with a diverse set of customer needs," said Ouster CEO

Angus Pacala. "Together, we will aim to deliver the performance customers demand while achieving price points low enough to promote mass adoption."

"Lidar is a valuable enabling technology for autonomy, with the ability to dramatically improve the efficiency, productivity, safety, and sustainability of a world in motion. We aim to create a vibrant and healthy lidar industry by offering both affordable, high-performance sensors to drive mass adoption across a wide variety of customer applications, and by creating scale to drive profitable and sustainable revenue growth," said Velodyne CEO Dr. Ted Tewksbury. "The combination of Ouster and Velodyne is expected to unlock enormous synergies, creating a company with the scale and resources to deliver stronger solutions for customers and society, while accelerating time to profitability and enhancing value for shareholders."

The combined company will offer a robust suite of products to continue to serve a diverse set of end-markets and customers while executing on an innovative product roadmap to meet the future needs of the market. A unified engineering team, compelling product roadmap, and focused customer success team will aim to provide best-in-class support to customers to deliver affordable and more performant sensors. Further, management plans to streamline operational expenditures to build an overall cost structure that is in line with the projected revenue growth of the combined company. Ouster and Velodyne had a combined cash balance of approximately $355 million as of September 30, 2022, and aim to realize annualized cost savings of at least $75 million within 9 months after closing the proposed merger. With an expanded global commercial footprint and distribution network, the combined company expects to deliver increased volumes, reduce product costs, and drive sustainable growth.

**Leadership and Governance**

The combined company will be led by Angus Pacala, who will serve as Chief Executive Officer, and Dr. Ted Tewksbury, who will serve as Executive Chairman of the Board. The Board will be comprised of eight members, with each company appointing an equal number of members. The full Board and executive team will be announced at a later date.

**Transaction Details**

The merger agreement was signed on November 4, 2022. Under the terms of the agreement, each Velodyne share will be exchanged for

0.8204 shares of Ouster at closing. The transaction will result in existing Velodyne and Ouster shareholders each owning approximately 50% of the combined company, based on current shares outstanding.

The merger transactions are subject to customary closing conditions including shareholder approval by both companies. Both companies will continue to operate their businesses independently until the close of the merger transactions. The merger transactions are expected to be completed in the first half of 2023.

Barclays is serving as financial advisor and Latham & Watkins LLP is serving as legal advisor to Ouster. BofA Securities, Inc. is serving as financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal advisor to Velodyne.

\* \* \*

22.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Velodyne's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Registration Statement**

23.     On November 23, 2022, Velodyne and Ouster jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.   The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

7

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the financial advisors in their analyses. The Registration Statement discloses management-prepared or management-approved financial projections for the Company and Ouster which are materially misleading. The Registration Statement indicates that in connection with the rendering of their fairness opinion, that the management of Ouster and Velodyne prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25.     For the Velodyne Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2022 through 2024: Non-GAAP Cost of Goods Sold, Non-GAPP Operating Profit, Non-GAAP Operating Profit After Tax, Unlevered Free Cash Flow, and Adjusted EBITDA, but fails to provide line items used to calculate this metric and/or a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

26.     The Registration Statement fails to disclose the management projections for Ouster.

27.     When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

29.     Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measures to make the non-GAAP metric included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for Velodyne*

30.    With respect to BofA's *Selected Publicly Traded Companies Analysis* for Velodyne, the Registration Statement fails to disclose the financial metrics for each company selected by BofA for the analysis.

31.    With respect to BofA's *Discounted Cash Flow Analysis* for Velodyne, the Registration Statement fails to disclose: (i) the terminal values for the Company; (ii) the inputs and assumptions underlying the range of perpetuity growth rates ranging from 2.5% to 3.5%; (iii) the inputs and assumptions underlying the discount rates ranging from 12.5% to 16.0% for Velodyne; (iv) the Company's weighted average cost of capital.

32.    With respect to BofA's analysis of publicly available equity research analyst price targets for Velodyne common stock, the Registration Statement fails to disclose: (i) the equity research analysts observed; (ii) the analysts' price targets; (iii) the basis for discounting one year by 14.25% cost of equity.

33.    With respect to BofA's *Selected Publicly Traded Companies Analysis* for Ouster, the Registration Statement fails to disclose the financial metrics for each company selected by BofA for the analysis.

34.    With respect to BofA's *Discounted Cash Flow Analysis* for Ouster, the Registration Statement fails to disclose: (i) the terminal values for Ouster; (ii) the inputs and assumptions underlying the range of perpetuity growth rates ranging from 2.5% to 3.5%; (iii) the inputs and assumptions underlying the discount rates ranging from 12.5% to 16.0% for Ouster; (iv) the Company's weighted average cost of capital.

35.    With respect to BofA's analysis of publicly available equity research analyst price targets for Ouster common stock, the Registration Statement fails to disclose: (i) the equity

research analysts observed; (ii) the analysts' price targets; (iii) the basis for discounting one year by 14.25% cost of equity.

36.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

39.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things,

the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

42.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43.      Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.      The Individual Defendants acted as controlling persons of Velodyne within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Velodyne, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Velodyne, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45.      Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46.      In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Velodyne, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

47.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 1, 2022                    **MELWANI & CHAN LLP**

                                 By:   */s/ Gloria Kui Melwani*
                                       Gloria Kui Melwani (GM5661)
                                       1180 Avenue of the Americas, 8th Fl.
                                       New York, NY 10036
                                       Telephone: (212) 382-4620
                                       Email: gloria@melwanichan.com

                                       *Attorneys for Plaintiff*